CHAS. GOODMAN & THOS. CORWIN, Trustees, etc., *v.* THE CIN-
CINNATI AND CHICAGO RAILROAD COMPANY.

(No. 6,607.)

1. A deed of trust to secure the payment of the principal and interest of certain bonds, provided that " in case the railroad company should fail to pay the principal, or any part thereof, or any interest on said bonds, at the time when the same may become due and payable, after sixty days, etc., the trustees may enter and take possession of the premises and have, use and employ the same; and apply the proceeds to the principal and interest unpaid; or may cause the premises, or so much thereof as may be necessary to pay and discharge the principal and interest unpaid, to be sold, and appropriate the proceeds to the bonds due, principal and interest," etc.

*Held,* on a petition filed by the trustees, that so much of the premises as were necessary would be ordered to be sold, to pay arrearages of interest, though no part of the principal of the bonds had as yet become due.

2. Whenever a debt is payable by installments, the failure to pay any one of them, will authorize a foreclosure and sale.

SPECIAL TERM.—On demurrer to petition. Proceeding to foreclose a mortgage to pay interest -due on railroad bonds.

The plaintiffs are the trustees of a corporation, formerly known by the name of the Western Railroad Company, and now known as the Cincinnati and Chicago R. R. Co., the former corporate name having been changed in the mode required by law. On the 1st of July, 1853, the Western Railroad Company conveyed to the plaintiffs, in trust for the purposes declared in the deed, certain real estate, situated in Cincinnati, and valued at $80,000, to secure the payment of fifty bonds, of even date, therewith issued by the company, and made payable to Charles W. Rockwell, or bearer, for one thousand dollars each, ten years after their date, with interest thereon, at eight per cent., payable semi-annually, at the Ohio Life Insurance and Trust Co., New York. The deed contains the usual clauses, vesting the title to the land in the trustees, to hold the same for the purposes designed ; that is,

"*in case the railroad company should fail to pay the principal,* or any part thereof, or any *interest on said bonds,* at any time when the same may become due and payable according to the tenor thereof, when demanded, then, after sixty days after such default, in case said principal or interest shall then remain unpaid, upon the request of any of the holders of the said bonds, the trustees may enter and take possession of all, or any part of the premises conveyed, and have, use and employ the same, making all needful repairs; after deducting the expenses of such use and repairs, to apply the proceeds to the principal, and interest unpaid; or the trustees, at their discretion may, or on the written request of the holders of at least one-half the bonds then unpaid, and unconverted into stock, shall cause the premises, or so much thereof as shall be necessary to pay and discharge the principal and interest of all such bonds as may then be unpaid, or unconverted into stock, as aforesaid, to be sold at public auction, after thirty days notice, with full power to execute to the purchaser a valid conveyance of the title, and appropriate the proceeds to the principal and interest due and unpaid, as well as the expenses of the trust; and retain the residue, to pay any interest or principal afterward to become due and payable on any of said bonds." It was also stipulated "that until default shall be made, in the payment of interest on the bonds, as the same shall become due and payable, or of the principal, when the same shall become due, the railroad company shall retain the possession of the property, use and enjoy the same, and apply to their own benefit the rents and revenues, of all descriptions, arising from the same."

The bonds were all of the same tenor, with coupons attached for the semi-annual payments of interest at the rate stipulated.

The petition sets forth that there is an arrear of interest now due of $11,108.85, which the defendants are unable to pay; and the additional sum of $2,000 will soon become due, and that the holders of the bonds have demanded of the trustees that they should proceed to sell the property conveyed in trust, as aforesaid, as well for the payment of the

principal of the bonds as the interest due.    It is further alleged that the taxes on the property have not been paid, and the same has been sold therefor.   The amount of taxes, penalty, and interest thereon, and the taxes since paid by the purchaser, will make up nearly the sum of $900, which is a charge upon the estate conveyed, and must be relieved before the security given by the deed of trust can be available to the creditors of the railroad company.   There is a prayer for a foreclosure and a sale, stating that doubts have been suggested by the defendants as to the right to subject the property conveyed in trust, until the time for the payment of the bonds has expired.

*Corwin & Probasco*, for plaintiffs.

*Smith & Lowe*, for defendant.

STORER, J.   It is denied by the defendants that we have any power to order a sale of the property.   They say, as interest only is due, and the principal will not become due until 1863, no decree can be rendered to charge the property. They refer to the clause in the deed which confines the remedy, as they insist, for the non-payment of interest, to the rents and income of the estate conveyed, and that no sale can be made until, as it is claimed, under another clause, the principal becomes due.

To this, it is replied, that such can not be the proper construction of the deed of trust; its object was to secure not only the principal, but the interest, as it became due, and no rule should be, therefore, applied that would defeat the intention of the original parties.

An examination of the clauses, it seems to us, will readily produce the conviction that they are to be taken together. They are separated only by a conjunction, and, when viewed as parts of a general power, may, very fairly, be regarded as providing a double remedy for the non-performance of the obligation by the defendants.   First, if the interest or any

Goodman & Corwin, Trustees, v. Cincinnati and Chicago Railroad Co.

part of the principal, is unpaid, the trustees may take posses-
sion of the premises, and appropriate the rents and income,
or, at their discretion or on the application of the owners of
one-half the bonds unpaid, shall sell such part of the estate
conveyed in trust as shall be sufficient to pay the interest
and principal due and unpaid. This construction harmoni-
zes the clauses, gives a just interpretation to the contract,
and provides a security for both principal and interest, not
merely available *in futuro*, but *in presenti*, and interest can
then properly be calculated. It may grow out of and be de-
pendent upon the principal debt, yet, when once due, it must
draw after it the benefit of the security given for its payment;
not by its ultimate discharge when the principal shall become
due, but its prompt and certain liquidation at the several
times at which it was agreed to be paid.

This was permitted by Lord Northington, in *Stanhope* v.
*Manners*, 2 Eden's Ch. 197, when, for the non-payment of
interest, the mortgage was held to be forfeited; and in the
case of the *West Branch Bank* v. *Chester*, 11 Pa. St.
282, Judge Woodward decides the precise question before
us. "The interest," he says, "is part of the substance of
the mortgage debt; it belongs not to it by tacking, but, *pro
tanto*, it is the debt itself;" it is as precisely the business of the
mortgage to protect the interest, as the principal. It was as
old a lien for the one as the other. The semi-annual pay-
ment of interest is one of the conditions on which the estate
is suspended.

We might well imply, then, if there was no provision
authorizing a sale, by the deed of trust, that, without vio-
lence to the instrument, it was a condition upon which the
estate was held that it should be made subservient to the pur-
pose of securing both principal and interest; and a default
in the payment of either, would enable the trustee, or mort-
gagee, to subject the estate to sale; and, surely, when an
incorporated company, not only refuses to pay interest on
its bonds, but admits its utter inability to do so, it is no
more than common justice, that any security held by the

creditor should be subjected to produce the means to discharge it. We can see no practical difficulty in granting the prayer of the trustees, and no legal objection to the relief they seek.

On general principles, and without the stipulation in the deed of trust authorizing a sale, even if no power to sell existed, we might find, in the jurisdiction our courts have always exercised, when a foreclosure is sought of a mortgage security, a sufficient vindication for our decree.

Whenever a debt is payable by installments, the failure to pay any one of them has been held to authorize a foreclosure and sale. This is the ruling in 7 Ohio, pt. 2, 231, *King* v. *Longworth*, and is now the law of this court; and it is not a novel principle that is thus sustained. We find it acted upon in the English chancery courts, and acquiesced in, without an exception, as we believe, by every judicial tribunal in the United States. But, perhaps, it might be urged that interest due, though specially required to be paid, ought not to be considered in the light of an installment of the principal; and the argument of the defendants' counsel would seem to countenance such an idea. We do not, however, appreciate its force. We suppose interest unpaid becomes principal *pro tanto*. In the present case, we regard the legal title to the property as in the trustees, not merely as mortgagees, but to protect, in addition, the relative rights of the railroad company, and the bondholders. It would require, therefore, the release of the estate by the trustees themselves, or a decree of court to divest their title, when the interest held by an ordinary mortgagee might be otherwise extinguished. There is then, substantially, no estate in the defendants; the right only remains to compel the proper execution of the trust. 11 Ohio, 334, *Moore* v. *Burnet;* 16 Ohio, 469, *Morris* v. *Way.*

We can, therefore, very properly aid the trustees in performing their duties, and decree all appropriate relief.

We do not suppose the entire debt has become due, by the failure to pay the interest, and we will not, therefore,

decree a sale of the whole property, unless the defendants shall consent.

So much of the property should be sold, however, at once, as will discharge the taxes, penalties accrued, and all the interest now due; and an order will be directed to the plaintiffs to subdivide the whole property, and return the valuation thereof, without unnecessary delay, that the court may be advised what portions should be sold for the liabilities now existing.

Demurrer overruled, and decree for sale.